IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CARL R. GARGANEOUS                                                          PLAINTIFF

v.                          5:07CV00287 HLJ

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                     DEFENDANT


**MEMORANDUM AND ORDER**

Plaintiff, Carl Garganeous, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance Benefits and Supplemental Security Income, based on disability.  Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Reynolds v. Chater, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge.  (Docket #4)

decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. <u>Sultan v. Barnhart</u>, 368 F.3d 857, 863 (8th Cir. 2004); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

Plaintiff alleged he was limited in his ability to work by lupus, rheumatoid arthritis and depression.  (Tr. 14) Finding that alcohol abuse was material to Plaintiff's disability, the Commissioner determined Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 21)  The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any

time through September 19, 2006, the date of his decision.  (Tr. 23)  On September 28, 2007, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-7)  Plaintiff then filed his complaint initiating this appeal. (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence and that the case should be affirmed and dismissed with prejudice.

Plaintiff was 41 years old at the time of the hearing.  (Tr. 254)  He earned a high school diploma.  Id.  He has past relevant work experience as a machine operator and fine wire drawer.  (Tr. 275)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process.  The first step involves a determination of whether the claimant is involved in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2006).  If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. Id. at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement.  Id. at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If not, benefits are denied. Id.  A "severe" impairment significantly limits a claimant's ability to perform

3

basic work activities.  Id. at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. Id., §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If so, and the duration requirement is met, benefits are awarded. Id. If the claimant does not meet or equal a Listing, then a residual functional capacity (RFC) assessment is made. Id., §§ 404.1520(a)(4); 416.920(a)(4).  This RFC assessment is utilized at Steps 4 and 5. Id.

Step 4 involves a determination of whether the claimant has sufficient RFC to perform past relevant work. Id., §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If so, benefits are denied. Id.

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. Id., §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded. Id.

The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 25, 2004, and had a history of treatment for diffuse disease of connective tissue and alcohol abuse.  (Tr. 14)  He determined Plaintiff had a "severe" impairment but not an impairment or combination of impairments that met or equaled a Listing.  (Tr. 14-15)  The ALJ also judged that Plaintiff's allegations regarding his limitations were not entirely credible.  (Tr. 15)

The ALJ found Plaintiff retained the RFC for sedentary work. (Tr. 21) He determined Plaintiff was unable to perform any of his past relevant work but could perform other work, including assembler, which jobs existed in significant numbers in the national economy. Id. Thus, the ALJ concluded Plaintiff was not disabled.

**A. Was alcohol a contributing factor to Garganeous' disability?**

Plaintiff takes issue with the fact that the ALJ did not cite to 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1) (2006) anywhere in the decision, and he claims such an omission was reversible error. Sections 404.1535(b)(1) and 416.935(b)(1) require the ALJ to determine whether a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability, i.e., whether the ALJ would still find the claimant disabled if he stopped using drugs or alcohol. See 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1). This determination is made, however, only after the ALJ reaches the initial disability determination using the standard five-step approach discussed above "without deductions for the assumed effects of substance use disorders." See Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003). If the ALJ determines a claimant's physical and mental limitations, absent substance use, would not be disabling, it is determined that the addiction is a contributing factor material to the determination of disability, and the disability application must be denied. Id. at § (b)(2)(i); see also 42 U.S.C. § 423(d)(2)(C). Conversely, if the ALJ determines a claimant's physical and mental limitations,

5

independent of the substance use, are disabling, the addiction is not a contributing factor material to the disability determination. Id. at § (b)(2)(ii). The burden of proving that alcoholism is not a contributing factor material to the disability determination falls on the claimant. See Brueggemann v. Barnhart, 348 F.3d at 693. "Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism[,] ... may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." Id. at 695.

In this case the ALJ, while following the familiar five-step analysis, found Plaintiff was disabled but then found that he would not be disabled absent the alcoholism. Upon review of the decision, it appears the ALJ followed the necessary steps set forth in the Social Security Regulations and case law for determining whether Plaintiff's alcoholism was a contributing factor in his disability. Specifically, the ALJ found that, including his alcoholism, Plaintiff's depression mildly restricted his daily activities, moderately limited his ability to function socially and did not limit his ability to maintain concentration, persistence or pace. (Tr. 19) The ALJ also determined, however, that if Plaintiff stopped his substance abuse, his depression could be well controlled and doctors could prescribe the medication necessary to stabilize his lupus. (Tr. 18)

On October 8, 2004, Lisa A. Lowery, M.D., notified Plaintiff she was withdrawing from further professional attendance to his care due to his failure to follow medical advice. (Tr. 138) Dr. Lowery noted on numerous occasions that Plaintiff presented smelling of alcohol (Tr. 143, 148, 151-2) and that she felt the alcohol was contributing to his symptoms (Tr. 139). Dr. Lowery counseled Plaintiff on the need to participate in alcohol rehabilitation, but Plaintiff told Dr. Lowery he was not ready to do so. (Tr. 139, 144, 149, 154) She noted she was limited with respect to the medication she could safely give Plaintiff because of his history and felt he would likely see improvements with his gastrointestinal complaints if he stopped drinking. Id.

Other treating physicians also told Plaintiff to stop drinking. A. Alberto Sanchez, M.D., a staff psychiatrist at Southeast Arkansas Behavioral Healthcare System, Inc., noted in 2005 that Plaintiff's mood and anxiety disorders were secondary to alcohol dependence (Tr. 192) and that Plaintiff needed to stop drinking because it contributed to his feelings of depression. (Tr. 191, 192, 194, 196-7) Hugo Jasin, M.D., UAMS Medical Center, noted "[t]he patient should be sternly warned to stop drinking alcohol," (Tr. 207) and Dr. Jasin could not start Plaintiff on any Imuran or Methotrexate because he "refuse[d] to stop drinking."[2] (Tr. 224, 227) Although Dr. Jasin wrote Plaintiff's alcohol intake was unrelated to his problems with "subacute cutaneous systemic

---

[2] Imuran and Methotrexate are used, inter alia, to treat patients with severe rheumatoid arthritis. Physicians' Desk Reference 2844, 2110(60th ed. 2006).

7

lupus erythematosus and fibromyalgia syndrome," (Tr. 250), he nevertheless opined Plaintiff was capable of working a low-stress job. (Tr. 231)

Based on the foregoing, the court concludes the ALJ followed the necessary steps set forth in the Social Security Regulations and case law for determining whether Plaintiff's alcoholism was a contributing factor in his disability.

**B. Was the RFC Assessment Proper?**

Plaintiff asserts second it was error for the ALJ to substitute his lay opinion for that of medical experts in determining how his use of alcohol affected his ability to engage in substantial gainful work activity. The Eighth Circuit has previously noted, however, that when the claimant is actively abusing alcohol or drugs, the determination of its effects will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped.[3] Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000). Even though the task is a difficult one, the ALJ must still develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other. Brueggemann v. Barnhart, 348 F.3d at 695.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, the RFC is a medical question, Lauer v. Apfel, 245 F.3d 700, 703-4 (8th

---

[3]The record here reflects that Plaintiff had reduced his drinking by the time of the hearing to "no more than four beers a day," (Tr. 266) and took medication that was "supposed to curb that appetite." (Tr. 274)

8

Cir. 2001), and the ALJ "may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *1 (1996). "The RFC assessment must first identify the individual's functional limitation or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945 (2006).[4] Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

 The ALJ makes an RFC determination based on all the record evidence, including: medical history; medical signs and laboratory findings; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); reports of daily activities; lay evidence; recorded

---

[4]Physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching); mental abilities such as limitations in understanding remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting; other abilities, such as skin impairments, epilepsy, vision, hearing or other impairments affecting the senses, and impairments which impose environmental restrictions, such as heat or noise. See 20 C.F.R. §§ 404.1545 and 416.945.

observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available.  SSR 96-8p, supra at *5; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004)(stating an ALJ must determine RFC based on all relevant evidence).

A review of the record shows the ALJ discussed the opinions of several treating physicians, including Dr. Jasin and Greg Wooten, M.D.  A mental impairment questionnaire, completed by Dr. Wooten in June 2006, indicated Plaintiff's alcohol dependence was in remission and that his current GAF was 50.  (Tr. 183) He determined Plaintiff appeared to respond poorly to antidepressant medications and that his prognosis was poor.  (Tr. 184-5) Further, Dr. Wooten anticipated Plaintiff's impairments or treatments would cause him to be absent from work more than three times a month and that he would have difficulty working at a regular job on a sustained basis.  (Tr. 186) Dr. Wooten determined Plaintiff was moderately limited in his daily activities, markedly limited in maintaining social functioning, frequently deficient in maintaining concentration, persistence or pace, and would repeatedly (three times or more) experience episodes of deterioration or decompensation in a work-like setting.  (Tr. 187) The ALJ discounted Dr. Wooten's written evaluation because he "had not described this severity of limitations prior to [the] written evaluation."  The ALJ found there were no medical facts to support

10

Dr. Wooten's opinion of such severity and an inability to work and that the opinion expressed was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." (Tr. 17) See Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)("A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.") (citation omitted); see also Piepgras v. Chater, 76 F.3d 223, 236 (8th Cir. 1996) (a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement).

The ALJ likewise discounted Dr. Jasin's opinion regarding Plaintiff's RFC determination. Dr. Jasin, in May 2006, opined emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations and that these impairments, both physical and mental, often interfered with his attention and concentration. (Tr. 231) Again, Dr. Jasin's prognosis of Plaintiff was "good," and he felt Plaintiff capable of low-stress jobs. (Tr. 231) He found Plaintiff could, at one time, sit for 1 hour, stand for twenty minutes, and sit, stand, or walk less than 2 hours in an 8-hour work day, and would require a job that permits shifting positions at will, sometimes needing unscheduled breaks of twenty minutes on average. (Tr. 232) He determined Plaintiff could frequently lift 10 pounds or less, occasionally lift 20 pounds, and never lift 50 pounds and should avoid concentrated exposure to

extreme cold, heat, fumes, odors, dusts, gases, solvents, and chemicals.  (Tr. 233-4) Dr. Jasin opined Plaintiff would miss on average more than four days per month as a result of his impairments or treatment.  (Tr. 234) The ALJ made note of the fact that Dr. Jasin did not explain how Plaintiff's symptoms "might improve if he were to stop drinking and could begin treatment of the Imuran or Methotrexate," (Tr. 16) and that his opinion was contrary to the medical information in the medical file because there were no laboratory or medical findings Plaintiff had any limitations, other than to quit drinking.  (Tr. 16)

Although the opinions of Drs. Wooten and Jasin did not attribute any of Plaintiff's limitations directly to his alcohol consumption, as Plaintiff argues was required, the Eighth Circuit in Vester v. Barnhart, 416 F.3d 886, 891, (8th Cir. 2005), casts some doubt whether a claimant's ability to work in the absence of alcoholism is a "medical question" comparable to the traditional determination of RFC.  Assuming for the sake of argument, however, that the ALJ was required to develop some medical evidence, the court in Vester went on to find the record adequate to support the ALJ's decision that she would not be disabled absent her alcoholism.  Id.

Like in Vester, the court believes Drs. Wooten and Jasin, although neither phrased their opinions in terms of the statutory framework, provided supporting evidence that bolstered the ALJ's conclusion Plaintiff was not disabled.  Lauer v. Apfel, 245 F.3d at 704.  Dr. Wooten noted Plaintiff's alcohol dependence as "in

12

remission per patient report;" however, Plaintiff himself testified at the administrative hearing that he still drank up to four beers a day. (Tr. 188, 266)  Additionally, throughout his medical notes, Dr. Jasin discussed Plaintiff's need to cease use of alcohol, so he could take Imuran or Methotrexate. (Tr. 207, 224, 227) He further noted Plaintiff's prognosis was good and that he could perform a low-stress job.  Thus, the court believes it clear that medical evidence supports the ALJ's conclusion that alcohol was a material factor contributing to Plaintiff's disability and that a reasonable person considering the record as a whole could reach the conclusion adopted by the ALJ.

**C. Did the ALJ properly weigh the medical opinion evidence?**

Finally, Plaintiff argues the ALJ failed to afford controlling weight to the opinions of his treating physicians, Drs. Jasin and Wooten. "A treating physicians opinion is generally given controlling weight[.]" Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006)(citing 20 C.F.R. § 404.1527(d)(2))). However, if the treating physicians opinion is inconsistent with other substantial evidence in the case record, or if the treating physician's own inconsistency is noted, the opinion is undermined and can diminish or eliminate the weight given to the opinion. Id. (citations omitted).

As discussed in Section B, the ALJ discussed the opinions of both treating doctors and provided sufficient reasons for the weight given to the opinions. Specifically, the ALJ found the record did not support the limitations found by either Dr. Jasin or

13

Dr. Wooten and that Dr. Wooten's opinion was inconsistent. Although Dr. Wooten listed several side effects of Plaintiff's medication (severe sleepiness, fatigue, stomach upset) in answering the mental impairment questionnaire (Tr. 185), his treatment notes indicated no side effects. (Tr. 188, 190, 191-193) The regulations specifically require the ALJ to assess the record as a whole to determine whether the treating physicians' opinions are inconsistent with other substantial evidence in the record. Hacker v. Barnhart, supra (citation omitted).  Here, the ALJ did so and diminished the weight given the treating physicians' opinions, and substantial evidence on the record as a whole supports the ALJ's conclusion.  Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996); Pratt v. Sullivan, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

IT IS SO ORDERED this 29th day of September, 2009.

_____
_Henry L. Jones, Jr._
UNITED STATES MAGISTRATE JUDGE